Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck, NY 11021-3104
Telephone: (516) 268-7080
*spencer@spencersheehan.com*

United States District Court
Eastern District of New York                                    1:21-cv-00062

| | |
|---|---|
| Dana Newton, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　　- against -<br><br>Orgain Management, Inc.,<br><br>　　　　　　　　　　Defendant | <br><br><br><br><br>Complaint |

　　　　Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

　　　　1.　　Orgain Management, Inc. ("defendant") manufactures, labels, markets and sells non-dairy protein powder purporting to be flavored by vanilla beans. under the Orgain brand ("Product").

　　　　2.　　The relevant front label representations "Plant Based Protein Powder," "Vanilla Bean Flavor" and an image of a vanilla flower and vanilla beans.



3. In contrast to the representation as "Vanilla Bean Flavor" and picture of vanilla beans and vanilla flower, the Product does not contain any appreciable amount of flavoring from vanilla beans, such that the taste is dissimilar to what consumers expect from a product labeled as "vanilla bean flavor."

4. Vanilla (*Vanilla planifolia Andrews* and *Vanilla tahitenis Moore*) comes from an orchid plant that originated in Mexico where it was first cultivated.

5. The fruit pod of the vanilla flower is the vanilla bean, the raw material for vanilla flavorings.

6. The vanilla bean is heated in the sun and its flavor constituents extracted (vanilla extract).

7. Vanilla's unique and complex flavor is due to its many odor-active compounds including acids, ethers, alcohols, acetals, heterocyclics, phenolics, hydrocarbons, esters and carbonyls.

| MS Scan # | Area Integration | Peak Assignment | Peak Area % |
|---|---|---|---|
| 67 | 16132 | hexanal | 0.0206 |
| 71 | 16235 | butanediol isomer | 0.0207 |
| 81 | 57370 | butanediol isomer | 0.0732 |
| 103 | 36387 | 3-methylbutyric acid | 0.0464 |
| 115 | 33053 | furfural | 0.0422 |
| 141 | 27408 | butanal, diethyl acetal | 0.0350 |
| 262 | 18390 | 3-methylbutanal, diethyl acetal | 0.0235 |
| 281 | 25224 | hexanoic acid | 0.0322 |
| 289 | 2729 | methyl furfural | 0.0035 |
| 299 | 52183 | phenol + trace of benzaldehyde | 0.0665 |
| 349 | 2385 | 1H-pyrrole-2-carboxaldehyde | 0.0030 |
| 379 | 47287 | limonene + benzyl alcohol | 0.0603 |
| 397 | 13835 | heptanoic acid | 0.0176 |
| 409 | 31102 | gamma-hexalactone | 0.0397 |
| 415 | 19338 | p-cresol | 0.0247 |
| 425 | 4470 | hexanal, diethyl acetal | 0.0057 |
| 443 | 287479 | guiaicol | 0.3666 |
| 453 | 5947 | nonanal | 0.0076 |
| 477 | 10000 | phenylethyl alcohol | 0.0128 |
| 496 | 112067 | ? | 0.1429 |
| 505 | 44668 | benzoic acid + octanoic acid | 0.0570 |
| 522 | 4551 | diethyl succinate | 0.0058 |
| 536 | 2461 | ethyl benzoate | 0.0031 |
| 544 | 11769 | 1,2-benzenediol | 0.0150 |
| 555 | 145356 | 2-methoxy-4-methylphenol | 0.1854 |
| 567 | 2537 | methyl salicylate | 0.0032 |
| 587 | 8552 | hydroxy methyl furfural (HMF) | 0.0109 |
| 594 | 5555 | benzeneacetic acid | 0.0071 |
| 605 | 101562 | nonanoic acid | 0.1295 |
| 624 | 6802 | hydroquinone | 0.0087 |
| 631 | 3864 | 4-methoxybenzaldehyde (p-anisaldehyde) | 0.0049 |
| 642 | 6356 | ethyl nonanoate | 0.0081 |
| 653 | 53264 | 4-methoxybenzyl alcohol (p-anisyl alcohol) | 0.0679 |
| 676 | 14481 | cinnamyl alcohol | 0.0185 |
| 685 | 16094 | 3-hydroxybenzyl alcohol | 0.0205 |
| 718 | 12188570 | 3-hydroxybenzaldehyde + 4-ethoxymethylphenol | 15.5440 |
| 751 | 122634 | methyl cinnamte | 0.1564 |
| 759 | 60715743 | vanillin | 77.4301 |
| 796 | 90669 | methyl-p-methoxybenzoate (methyl paraben) | 0.1156 |
| 809 | 2228588 | vanillyl ethyl ether + trace of 4-hydroxy-3-methoxybenzyl alcohol | 2.8421 |
| 832 | 224829 | p-hydroxybenzoic acid | 0.2867 |
| 839 | 37335 | acetovanillone | 0.0476 |
| 892 | 950342 | vanillic acid | 1.2120 |
| 909 | 405589 | 3,4-dihydroxybenzaldehyde | 0.5172 |
| 935 | 82429 | 3,4-dihydroxy-5-methoxybenzaldehyde | 0.1051 |
| 954 | 6212 | ethyl homovanillate | 0.0079 |
| 975 | 78148 | syringealdehyde | 0.0997 |
| 1266 | 14130 | ethyl palmitate | 0.0180 |
| 1518 | 21477 | ethyl linoleate | 0.0274 |
| | 78413588 | Total | 100.0000 |

8. While vanillin plays a significant role, it contributes less than one-third of the overall flavor/aroma impact of vanilla.

3

9. Methyl cinnamate and cinnamyl alcohol provide distinct cinnamon and creamy notes to vanilla.

10. P-cresol contributes flavor notes described as woody and spicy.

11. Acetovanillone provides a sweet, honey note.

12. P-hydroxybenzoic acid and vanillic acid are significant phenolic compounds which contribute to vanilla's aroma.

13. 4-methoxybenzaldehyde (p-anisaldehyde) provides creamy flavor notes to vanilla.

14. 4-methoxybenzyl alcohol (p-anisyl alcohol) provides floral notes.

15. The popularity of vanilla in the 19th century led to the isolation of the most predominant flavor component, vanillin.

16. However, vanillin separated from the other compounds cannot produce the flavor and taste consumers know as vanilla.

17. Sensory evaluation of vanillin is mainly sweet, with a chemical-like taste.

18. The availability of low-cost vanillin resulted in consumers buying foods purporting to contain vanilla, which either contained no vanilla or a trace or de minimis amount, boosted by synthetic vanillin.

19. Deception about the source of a product's flavor resulted in regulations which require a food to disclose the source of its main flavor and whether it is natural or artificial.

20. Surveys have consistently found that at least seven out of ten consumers avoid artificial flavors.[1]

21. Reasons for eschewing artificial flavors include a desire to avoid synthetic

---

[1] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019; Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018.

ingredients with possible detrimental health effects.

22. "All demographics [of consumers] from Generation Z to Baby Boomers – say they would pay more" for foods with no artificial flavors."[2]

23. Consumers are entitled to know "whether the product [they are buying] is flavored with a vanilla flavoring derived from vanilla beans, in whole or in part, or whether the food's vanilla flavor is provided by flavorings not derived from vanilla beans."[3]

24. Natural flavors are flavors from natural sources made through natural processes. 21 C.F.R. § 101.22(a)(3).

25. These natural processes include roasting, heating, enzymolysis and fermentation.

26. There are two types of natural flavors: (1) "from the named fruit" ("FTNF"), like strawberry flavor from strawberries and (2) "other natural flavors" – sources other than the named fruit which provide the *flavor* of the named fruit.

27. If all of a food's characterizing flavor is from its characterizing ingredient, the front label is only required to state the name of the ingredient, i.e., vanilla or strawberry. 21 C.F.R. § 101.22(i)(1).

28. Artificial flavors are defined by the FDA as any flavoring from a synthetic source or made through an artificial process. 21 C.F.R. § 101.22(a)(1).

29. Where a food contains any artificial flavor that simulates the characterizing flavor, the front label is required to disclose this fact through the statement, "Artificially Flavored." 21 C.F.R. § 101.22(i)(2).

---

[2] Nancy Gagliardi, *Consumers Want Healthy Foods – And Will Pay More For Them*, Forbes, https://www.forbes.com/sites/nancygagliardi/2015/02/18/consumers-want- healthy-foods-and-will-pay-more-for-them/#37ec75ca75c5 (last visited September 28, 2020)

[3] Hallagan article.

30. In 2018, in response to a surge in fraudulently labeled vanilla flavored foods, the flavor industry trade group, The Flavor and Extract Manufacturers Association of the United States ("FEMA"), urged companies to return to truthfully labeling vanilla foods so consumers would not be misled by artificial vanilla flavors.[4]

31. The Product's front label is misleading because even though it states, "Vanilla Bean Flavor" with a picture of a vanilla bean and a vanilla flower, its ingredient list only identifies "ORGANIC NATURAL FLAVORS" and "NATURAL FLAVOR."

**INGREDIENTS: ORGAIN ORGANIC PROTEIN BLEND™** (ORGANIC PEA PROTEIN, ORGANIC BROWN RICE PROTEIN, ORGANIC CHIA SEED), **ORGAIN ORGANIC CREAMER BASE™** (ORGANIC ACACIA GUM, ORGANIC HIGH OLEIC SUNFLOWER OIL, ORGANIC RICE DEXTRIN, ORGANIC RICE BRAN EXTRACT, ORGANIC ROSEMARY EXTRACT), ORGANIC NATURAL FLAVORS, ORGANIC ERYTHRITOL, NATURAL FLAVOR, SEA SALT, ORGANIC ACACIA GUM, ORGANIC GUAR GUM, ORGANIC STEVIA, XANTHAN GUM

---

[4] John B. Hallagan and Joanna Drake, FEMA, "Labeling Vanilla Flavorings and Vanilla-Flavored Foods in the U.S.," Perfumer & Flavorist, Vol. 43 at p. 46, Apr. 25, 2018 ("Hallagan & Drake"); FEMA is the trade group for the flavor industry.

6

32. Laboratory analysis reveals the Product contains undisclosed artificial flavors – vanillin, maltol and piperonal. 21 C.F.R. § 172.515(b), § 182.60 ("Synthetic flavoring substances and adjuvants.").

33. The level of vanillin was numerous times higher than the amount present in vanilla beans.

34. Coupled with the absence of detectable levels of methyl cinnamate, cinnamyl alcohol, p-cresol, acetovanillone, p-hydroxybenzoic acid, 4-methoxybenzaldehyde (p-anisaldehyde), 4-methoxybenzyl alcohol (p-anisyl alcohol) and/or vanillic acid, this is indicative of a food with added vanillin from non-vanilla sources.

35. The Product contains at most *de minimis* vanilla and lacks the key odor-active compounds in authentic vanilla beans which provide a vanilla taste.

36. "Vanillin may be produced through processes recognized as yielding an artificial flavor consistent with the FDA definition of 'artificial flavor' such as the production of vanillin from lignin. Vanillin may also be produced through processes that yield a natural flavor consistent with the FDA definition of 'natural flavor.'" *See* Hallagan and Drake at p. 48.

37. Naturally produced vanillin is derived from eugenol through natural enzymatic reactions.

38. Assuming the added vanillin is produced through a natural process described, the Product is falsely labeled because it omits "artificially flavored."

39. Regarding vanillin produced using a natural process, FDA stated that the common or usual name for this material is "vanillin" and could be labeled as "vanillin derived naturally through fermentation."

40. According to legal counsel for the flavor industry, the labeling of a "food not subject

to a standard of identity," like Defendant's plant based protein powder, that has a characterizing flavor of vanilla, must disclose vanillin from non-vanilla sources, even if it is produced via a natural process. *See* Hallagan and Drake, The Flavor and Extract Manufacturers Association of the United States, "Labeling Vanilla Flavorings and Vanilla-Flavored Foods in the U.S.," Perfumer & Flavorist, Vol. 43 at 48, Apr. 25, 2018.

41. The FDA has stated that it is misleading to identify vanillin as a natural flavor in a food labeled as "vanilla" or "vanilla bean" because the only natural vanillin is from vanilla beans.

42. Moreover, "if the [vanillin] flavoring ingredient is being used in another food as 'vanilla flavoring' and the flavoring was not derived from vanilla, and if the characterizing flavor of the food is vanilla, then the food must be identified as 'artificially flavored.'"

43. However, Defendant does not use a naturally produced version of vanillin because the process is slow and non-economical.

44. The vanillin used in the Product is marketed as derived through a natural process when this process is artificial.

45. It begins with the isomerization of eugenol to isoeugenol under alkaline conditions.

46. It is converted into coniferal alcohol, then to ferulic acid.

47. Then the ferulic acid is oxidized, which is broken down into vanillin, under high pressure, high heat and alkaline conditions.

48. High pressure and high heat are not considered "natural" processes for the purposes of producing a "natural flavor," which means this vanillin is required to be designated as an artificial flavor. 21 C.F.R. § 101.22(a)(1).

49. Assuming the artificial process for vanillin is used, the Product is falsely labeled because it omits "artificial flavor" on the front label and ingredient list. 21 C.F.R. § 101.22(i)(2)

(requiring front label statement of "artificially flavored" where a food contains any artificial flavor which simulates the characterizing flavor).

50. Since vanillin is responsible for between one-quarter (25%) and one-third (33%) of the overall flavor and aroma impact of vanilla, it is false and misleading to describe the Product's taste as "vanilla," because it lacks detectable level of the odor-active compounds that are critical to the expected vanilla taste.

51. The added vanillin skews the balance of flavor compounds, and the result is dissimilar to what consumers expect from vanilla beans.

52. Maltol is another artificial flavor detected in the Product.

53. Though maltol is sometimes detected in vanilla at levels between 0.004 and 0.01 PPM, it is present at over 100 times this level.

54. This means it was added to the Product as a component of the "Organic Natural Flavor" and "Natural Flavor."

55. Maltol increases the sweetness of a food, yet vanilla's sweetness is appreciated on its own and added sweetness detracts from the vanilla taste desired by consumers.

56. Though maltol can be a "natural flavor," it is economically prohibitive to use the naturally derived version due to its price.

57. If a naturally derived and naturally sourced version of maltol were used, it would be present in an amount several times greater than it is, because the artificial version is much more potent.

58. Piperonal (heliotropine) is another artificial flavor in the Product, which contributes a powdery flavor not associated with vanilla.

59. Piperonal can be obtained naturally, but the natural version is cost-prohibitive, which

reduces its use.

60. Had "natural" piperonal been used, its concentration would exceed 20 PPM, since this is the typical usage level for the natural version.

61. Its presence in an amount less than 20 PPM supports the conclusion it is from an artificial source and/or made through an artificial process.

62. The presence of added vanillin, artificial maltol and artificial piperonal renders the front label representation of "Vanilla" false, deceptive and misleading because it omits the required statement of "artificially flavored." 21 C.F.R. § 101.22(i)(2).

63. Because Defendant's ingredient list designates "Organic Natural Flavors" and "Natural Flavor," it gives consumers the impression these are natural vanilla flavors, which is misleading because these contain artificial flavors.

64. The correct labeling of these flavor ingredients should be: "Organic Natural Flavors" and "Natural and Artificial Flavors."

65. Defendant's listing of "Organic Natural Flavors" and "Natural Flavor" makes it inconceivable for consumers without chromatography equipment at the checkout line to ascertain the Product contains artificial flavors.

66. In the alternative, Defendant's front label fails to disclose "with other natural flavors" ("WONF").

67. Where some flavor is from the named food with other natural flavors from sources other than the characterizing flavor which enhance, resemble or simulate the characterizing flavor, the front label is required to state, "With Other Natural Flavor." 21 C.F.R. § 101.22(i)(1)(iii).

68. Based on the front label statement of "Vanilla" without qualifying terms – i.e., naturally flavored, artificially flavored, other natural flavors – and back label statement of "Clean

Nutrition," consumers and Plaintiff expected the Product to be flavored only or predominantly from vanilla beans, not contain artificial flavors and have a vanilla taste.

69. Defendant's front label only discloses "vanilla bean flavor" when at a minimum it would be required to state "With Other Natural Flavor."

70. The representations are misleading because despite the side panel statement, "Our Commitment to Clean Nutrition," the Product contains several ingredients which consumers do not consider "clean."

**OUR COMMITMENT TO CLEAN NUTRITION**

71. According to CR Research and Ingredion Europe, consumers understand the term "clean" to refer to products that are (1) free from additives and artificial ingredients, (2) have a short list of simple, recognizable ingredients and are (3) minimally processed using traditional techniques that are understood by consumers.

72. The Product contains numerous ingredients consumers do not associate with "clean" products, because they are artificial, highly processed and have negative health effects.

73. Erythritol is an artificial sweetener used in low-sugar and sugar-free foods.

74. Though erythritol is found in plants, the type used in the Product does not occur in plants and is synthetic.

75. Erythritol is produced on a commercial scale through an electrochemical process which breaks down its starting material, sugar.

76. The Product contains xanthan gum, which is produced "on a commercial scale via the fermentation of sugars with the bacterium Xanthomonas campestris, and then harvested via

precipitation with isopropyl alcohol (rubbing alcohol)."[5]

77. The USDA considers xantham gum a synthetic ingredient. 7 C.F.R. § 205.605(b).

78. The Product contains other artificial and synthetic ingredients that are inconsistent with a product identified as providing "Clean Nutrition."

79. The description of the Product as providing "Clean Nutrition" is especially misleading because the back of the Product contains a medical endorsement.

80. Had plaintiff and class members known the truth, they would not have bought the Product or would have paid less for them.

81. The Product is sold for a price premium compared to other similar products, no less than $18.99 for 1.02 lbs (462g), higher than it would otherwise be sold for absent the misleading representations.

## Jurisdiction and Venue

82. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2)

83. Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

84. Plaintiff Dana Newton is a citizen of New York.

85. Defendant Orgain Management, Inc. is a California corporation with a principal place of business in Irvine, Orange County, California and though at least one member of Defendant is a citizen of New York, upon information and belief, at least one member of defendant

---

[5] https://www.foodnavigator-usa.com/Article/2017/08/31/General-Mills-hit-with-new-natural-lawsuit-over-xanthan-gum

12

is not a citizen of New York.

86.  "Minimal diversity" exists because plaintiff Dana Newton and defendant are citizens of different states.

87.  Upon information and belief, sales of the Product and statutory and other monetary damages, exceed $5 million during the applicable statutes of limitations, exclusive of interest and costs.

88.  Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred here – plaintiff's purchase of the Product.

89.  Venue is further supported because many class members reside in this District.

Parties

90.  Plaintiff Dana Newton is a citizen of Jamaica, Queens County, New York.

91.  Defendant Orgain Management, Inc. is a California corporation with a principal place of business in Irvine, California, Orange County.

92.  Defendant sells the Product through third-parties in brick-and-mortar stores like CVS and Walmart, from the websites of third-parties and directly to consumers.

93.  During the relevant statutes of limitations for each cause of action alleged, plaintiff purchased the Product within her district and/or State in reliance on the representations of the Product.

94.  Plaintiff bought the Product at one or more locations, including Amazon.com, on one or more occasions within the past two years.

95.  Plaintiff bought the Product at or exceeding the above-referenced price because she liked the product for its intended use and consumption and relied upon the representations the Product contained vanilla bean flavor from the vanilla bean.

96.  Plaintiff would not have purchased the Product in the absence of Defendant's

misrepresentations and omissions.

97. The Product was worth less than what Plaintiff paid for it and she would not have paid as much absent Defendant's false and misleading statements and omissions.

98. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's labeling is consistent with its composition.

## Class Allegations

99. The class will consist of all purchasers of the Product who reside in New York, Pennsylvania, Maryland, Florida and Texas during the applicable statutes of limitations.

100. Plaintiff seeks class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

101. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

102. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

103. Plaintiff is an adequate representative because her interests do not conflict with other members.

104. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

105. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

106. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

107. Plaintiff seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350
(Consumer Protection Statutes)

108. Plaintiff incorporates by reference all preceding paragraphs.

109. Plaintiff and class members desired to purchase a product which contained flavor from vanilla beans and ingredients expected to be "clean."

110. Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

111. Defendant misrepresented the Product through its statements, omissions, ambiguities and actions.

112. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

113. Plaintiff incorporates by reference all preceding paragraphs.

114. Defendant misrepresented the Product.

115. This duty is based on defendant's position, holding itself out as having special knowledge and experience in the sale of the product type.

116. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

117. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

118. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Fraud

119. Plaintiff incorporates by reference all preceding paragraphs.

120. Defendant misrepresented the attributes and qualities of the Product.

121. Defendant's fraudulent intent is evinced by its failure to accurately identify the Product's addition of artificial flavors and ingredients which consumers do not expect from "clean" products, when it knew not doing so would mislead consumers.

122. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Unjust Enrichment

123. Plaintiff incorporates by reference all preceding paragraphs.

124. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated: January 6, 2021

> Respectfully submitted,
>
> Sheehan & Associates, P.C.
> /s/Spencer Sheehan
> Spencer Sheehan
> 60 Cuttermill Rd Ste 409
> Great Neck NY 11021-3104
> Tel: (516) 268-7080
> Fax: (516) 234-7800
> *spencer@spencersheehan.com*
> E.D.N.Y. # SS-8533
> S.D.N.Y. # SS-2056

1:21-cv-00062
United States District Court
Eastern District of New York

Dana Newton, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

Orgain Management, Inc.,

Defendant

Complaint

```
Sheehan & Associates, P.C.
 60 Cuttermill Rd Ste 409
 Great Neck NY 11021-3104
    Tel: (516) 268-7080
    Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: January 6, 2021

/s/ Spencer Sheehan<br>Spencer Sheehan